672 So.2d 810 (1995)
Ex parte Willie Simmons JACKSON.
(Re Willie Simmons Jackson, alias Willie S. Jackson, alias Billy Boy Jackson v. State.)
1920376.
Supreme Court of Alabama.
October 13, 1995.
Rehearing Denied December 8, 1995.
Paul A. Young, Jr., Enterprise, and Jackson W. Stokes, Elba, for Petitioner.
James H. Evans and Jeff Sessions, Attys. Gen., and Cecil G. Brendle, Jr., Asst. Atty. Gen., and Sandra J. Stewart, Deputy Atty. Gen., for Respondent.

On Return to Remand
SHORES, Justice.
A jury convicted Willie Simmons Jackson for the offense of murder during the course of a robbery, made capital by § 13A-5-40(a)(2), Ala.Code 1975, and four counts of forgery in the second degree, in violation of § 13A-9-3. After a hearing, the jury returned an advisory verdict, by a majority vote of seven to five, recommending a sentence of life imprisonment, without parole, for murder. After a sentencing hearing, the trial court sentenced Jackson to 4 consecutive 15-year terms for the forgery convictions and overrode the recommendation of the jury and sentenced Jackson to death for the murder.
The Court of Criminal Appeals affirmed the convictions and the sentences. See Jackson v. State, 640 So.2d 1025 (Ala.Cr.App. 1992). This Court granted certiorari review. In Ex parte Jackson, 640 So.2d 1050 (Ala. 1993), this Court remanded this cause for the Court of Criminal Appeals to have the trial court determine whether the prosecution's reason for striking one of the jurors, Juror No. 48, was race-neutral, within the rules of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny.[1] *811 Because we remanded on the Batson issue, we did not address other issues raised on certiorari review.
On the trial court's return to the remand, the Court of Criminal Appeals again affirmed, holding that the reasons articulated by the State for striking the potential juror were race-neutral and that the trial court had properly denied the appellant's Batson claim. Jackson v. State, 672 So.2d 808 (Ala.Crim. App.1994).
Now that on remand the trial court and the Court of Criminal Appeals have addressed the Batson question addressed in our first opinion (640 So.2d 1050), we now consider the other issues raised in Jackson's certiorari petition.
In his petition, Jackson raised the same eight issues he had raised in the Court of Criminal Appeals. The opinions released by the Court of Criminal Appeals thoroughly treat each of those issues. Jackson v. State, 640 So.2d 1025 (Ala.Crim.App.1992); Jackson v. State, 672 So.2d 808 (Ala.Crim.App.1994).
Our review of a death penalty case requires us to address any plain error or defect found in the proceeding under review, even if the error was not brought to the attention of the trial court. Rule 39(k), Ala. R.App.P. `"Plain error" only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.'" Ex parte Womack, 435 So.2d 766, 769 (Ala.Cr.App. 1983), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983), quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981). This Court will take appropriate action when the error "has or probably has" substantially prejudiced the defendant. Rule 39(k), Ala.R.App.P.
Having considered the record, together with the briefs and arguments of counsel, we conclude that the judgment of the Court of Criminal Appeals (Jackson v. State, 640 So.2d 1025 (Ala.Crim.App.1992); Jackson v. State, 672 So.2d 808 (Ala.Crim.App.1994)), must be affirmed. Ala.R.App.P. 39(k).
AFFIRMED.
HORNSBY, C.J., and MADDOX and INGRAM, JJ., concur.
HOUSTON, J., concurs in result.
HOUSTON, Justice (concurring in the result).
In my dissent in Smith v. Schulte, 671 So.2d 1334 (Ala.1995), I asked:
"[W]hat is going to happen in future capital cases in which a jury does not unanimously sentence to death but the trial court does sentence to death (which is permissible under Alabama law, assuming that it is not unconstitutional under the state constitution, see Harris v. Alabama, ___ U.S. ___, 115 S.Ct. 1031 [130 L.Ed.2d 1004] (1995)) [?]"
Today, I received my answer. Nothing.
At the time the Constitution of Alabama of 1901 was ratified, juries in Alabama sentenced to death or life imprisonment in capital cases and fixed the amount of compensatory and punitive damages in civil cases.
In reviewing death penalty cases, this Court must notice error that is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceeding. Ex parte Bankhead, 585 So.2d 112, 117 (Ala.1991).
In this case, a jury did not unanimously recommend the death sentence. In fact, a majority of the jury recommended life imprisonment without parole. At the time of the ratification of the 1901 Constitution, this would not have been a valid sentence. Ala. Code 1897, § 4858.
In Gilbreath v. Wallace, 292 Ala. 267, 269-70, 292 So.2d 651, 653-54 (1974), this Court held: "Alabama's Constitution effected a `freezing' of the right to jury trial as of 1901" in both "civil and criminal cases."
*812 In Ex parte Giles, 632 So.2d 577 (Ala. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994), quoting Crowe v. State, 485 So.2d 351, 364 (Ala.Crim.App. 1984), rev'd on other grounds, 485 So.2d 373 (Ala.1985), a majority of this Court held in effect that "`Article I, Section 11, confers the right of trial by jury as [it] existed at common law and the time of Alabama's first [1819] state constitution'" (emphasis added in Giles) and that "a historical review" of the right was the "starting point in any § 11 analysis." 632 So.2d at 580-81. At common law and at the time of the first Alabama Constitution, juries convicted and the court alone sentenced.
In Smith v. Schulte, supra, the majority of this Court reembraced Gilbreath v. Wallace, supra, to hold that § 11 prohibited the legislature from capping at $1,000,000 the amount that could be awarded in a medical malpractice wrongful death action, an action that was unknown to the common law and that was not in existence at the time of the first Alabama Constitution, but was in existence at the time of the ratification of the Constitution of 1901. Therefore, in Smith v. Schulte, the majority of this Court departed from its Giles holding that § 11 "confers the right to trial by jury as [it] existed at common law and the time of Alabama's first state constitution" and departed from its historic analysis of the claimed right, because there was no right to recover for wrongful death at common law or at the time of the first Alabama Constitution. This was a right that was solely a creature of the legislature created after the first Constitution, but before the 1901 Constitution.
If I had voted with the majority in Smith v. Schulte, I would have to conclude that it is plain error to affirm Jackson's sentence to death; however, I did not vote with the majority, because, in my view, the majority opinion in Smith v. Schulte is plain error.
The majority of this Court has made Art. I, § 11, of the Alabama Constitution its plaything. It can restrict § 11 so as to permit the legislature, after the ratification of the 1901 Constitution, to impose a $100,000 maximum amount of damages that can be recovered by an individual in a tort action against a governmental entity, when there was no such limitation on tort damages before the ratification of the 1901 Constitution (see Garner v. Covington County, 624 So.2d 1346 (Ala.1993)); it can broaden § 11 wide enough to strike down a $250,000 cap on punitive damages (Henderson v. Alabama Power Co., 627 So.2d 878 (Ala.1993)); it can shrink § 11 small enough to be able to affirm a court's, as opposed to a jury's, sentence to death, even though sentencing to death was a jury's function when the 1901 Constitution was ratified (see Ex parte Giles, 632 So.2d 577 (Ala. 1993)); it can again broaden § 11 wide enough to strike down a $1,000,000 cap on a wrongful death recovery in a medical malpractice action (Smith v. Schulte, supra); and today it shrinks § 11 so small that it can ignore it ("the jury returned an advisory verdict, by a majority vote of seven to five, recommending a sentence of life imprisonment, without parole," 671 So.2d at 1367) and affirm Jackson's death sentence. I dissented in Henderson v. Alabama Power Co. and in Smith v. Schulte. I concurred in the result in Ex parte Giles. I concur in the result in this case, because I believe the legislature had the power to impose caps on punitive damages and to fix the method of punishment for crime (Henderson v. Alabama Power Co., 627 So.2d at 905-08 (Houston, J., dissenting)); Ex parte Giles, 632 So.2d at 587 (Houston, J., concurring in the result). I regret that the abolition of caps on punitive damages was such a felt necessity of the times that the majority of this Court played a sleight-of-hand trick to justify striking these caps, while trying not to have to declare unconstitutional much of Chapter 5 of Title 13A of the Code (Ala.Code 1975, §§ 13A-5-1 through 13A-5-59), "Punishments and Sentences."
I am convinced that Henderson v. Alabama Power Co. and Smith v. Schulte were wrongly decided. If there is a due process or equal protection violation as a result of this waffling by the majority, it would be the civil defendants whose property was taken in excess of legislatively mandated amounts who would have a right to have that violation redressed, not the criminal defendants whose *813 punishment has been legally prescribed by legislation.
Therefore, I concur in the result. However, if I had voted with the majority of the Court on the right-to-jury-trial issue in Henderson v. Alabama Power Co. or in Smith v. Schulte, I would have been unable to vote to affirm Jackson's sentence of death.
NOTES
[1] Our opinion in Ex parte Jackson, 640 So.2d 1050 (Ala.1993), erroneously stated that Jackson had been convicted of four counts of possession of a forged instrument in the second degree, in violation of § 13A-9-6, Ala.Code 1975, and that he had been sentenced for a term in prison for those charges. Although Jackson was indicted for four counts of possession of a forged instrument in the second degree, in violation of § 13A-9-6, those charges were nol-prossed during the trial of the case. R.T. 1328.